Wescott *v.* McDonald.

*Woodman, pro se.*

*Haines,* for the defendant.

---

WILLIAM WESCOTT *versus* JAMES McDONALD *& ux.*

The St. 1823, c. 229, authorized the sale of non-resident *improved land, taxed to persons within the State,* for the payment of taxes thereon.

But the St. of 1826, c. 337, does not provide that the return of the collector on the warrant, stating his proceedings in advertising and selling the estate, should be received as evidence that he had complied with the requisitions of the statute, when the sale is of improved land of proprietors living within the State.

By the St. 1821, c. 52, an administrator, on being duly licensed, was authorized to make sale of the real estate of the deceased for the payment of his debts which had been conveyed away by him in his lifetime, if the creditors of the estate were by law entitled to consider such conveyance fraudulent as to them, although there was no actual premeditated fraud.

THIS was a writ of entry, demanding against James McDonald and his wife a farm lying partly in Gorham and partly in Standish. The evidence reported, and the papers referred to, cover much space, and are not necessary for the proper understanding of the points decided. Sufficient appears in the instruction of the Judge at the trial, and in the opinion of the Court.

At the trial before WHITMAN C. J. the demandant offered in evidence a deed from Eli McDonald, administrator, to himself of the premises in controversy, dated Nov. 12, 1841, and acknowledged before a justice, the certificate bearing date of Oct. 12, 1841. The tenants objected to the admission of this deed: 1. Because the date of the acknowledgment was antecedent to the time of sale: 2. Because it purported on its face to convey to the demandant property which had been conveyed

by the deceased in his lifetime to Mrs. McDonald, one of the tenants. The objections were overruled, and the deed was read.

The tenants, to show a title under a collector's sale, offered the return of the collector of his doings as such upon his warrant, as evidence of a compliance with the requisitions of the statute, in advertising and posting notices of the intended sale. This evidence was objected to, and the Judge ruled that it was inadmissible, and it was excluded.

The report of the case states, that among other things, the Judge presiding instructed the jury, that the present action against husband and wife was unadvisedly commenced, and that they must return a general verdict for the wife, that she did not disseize, &c.; and that they must return a like verdict for the husband, if they found he was in possession under a legal title in his wife to the demanded premises; that the proceedings of the administrator were conformable to law and vested title and property of demanded premises in the plaintiff, if they were satisfied property therein was in James McDonald, deceased, at the time of his death; that there appeared in evidence no valid objection to the deed of January 10, 1833; that if at the time of his death, the deceased was insolvent or greatly indebted, the deed of April 12, 1836, would be inoperative and should be deemed a voluntary conveyance unless a sufficient consideration was proved; that plaintiff claiming under administrator's sale for the payment of debts, the estate being insolvent, had the same legal right to contest the validity of this deed, that a creditor would have had who in the lifetime of deceased, had levied an execution on it after the conveyance; that the deceased being manifestly greatly indebted, a voluntary conveyance, while so indebted, made by him in his lifetime, would be void, as against creditors, and an administrator, duly licensed therefor, might rightfully sell it; that the administrator's deed was good notwithstanding it purported to convey land which had been conveyed by deceased in his lifetime to the defendants; that the collector's deed must be considered inoperative, and void, because it was not proved that the

collector posted up notices in the town of Standish, before the sale, conformably to law, his return thereof though made under oath, pursuant to statute requisitions, not being legal evidence of the fact; that if they were satisfied that the land sold for taxes was connected with the homestead for purposes of fuel and pasturing, it should be considered improved land and not liable to be taxed and sold as non-resident land, unless the owner lived out of the State; that it was not necessary for the plaintiff to prove an entry before action was commenced, a right of entry being sufficient to enable him to maintain it; that parol admissions in regard to title to real estate, were of very little consequence, and could avail little in opposition to written instruments.

The defendant's counsel requested the Judge to instruct the jury that the lands of a person deceased were not liable for the payment of his debts, unless he died seized of them, or had fraudulently conveyed them, or was colorably and fraudulently disseized of them with the intent to defraud his creditors; and that the deceased at the time of his decease was not seized of the demanded premises, his deed of April 12, 1836, having vested the legal seizin of them in the defendants, and that the sale therefore by the administrator was inoperative and void, and nothing passed by his deed to the plaintiff. The Judge so far declined to give these instructions as to instruct the jury, that if they were satisfied that the deceased's estate was insolvent, or that he at the time of his decease, was greatly indebted, the deed of April 12, 1836, must be considered a voluntary conveyance and void, and that the administrator had legal right to sell the premises thereby conveyed, pursuant to the statute provisions, as the property of the deceased.

The jury returned a general verdict against the tenants, for so much of the demanded premises as lies in the town of Standish, and in their favor for the residue.

*Codman & Fox* argued for the tenants, citing St. 1821, c. 116; St. 1823, c. 229; St. 1826, c. 337; 21 Pick. 187; St. 1821, c. 52, § 1; 5 Mass. R. 244; 2 Greenl. 318; 4 Greenl. 195; 5 Greenl. 471.

*Preble* and *Adams* argued for the demandant, citing 2 Com. Dig. 97, 108 ; 5 Com. Dig. 550 ; Yelv. 166 ; 7 Peters, 204 ; Co. Lit. 357, (b.) ; 1 Jac. Law Dic. 283 ; Strange, 1167 ; 1 Ld. Raym. 443 ; 16 Mass. R. 480 ; St. 1831, c. 501 ; 4 Greenl. 195 ; 3 Mass. R. 523.

The opinion of the Court was drawn up by

SHEPLEY J. — It appears, that James McDonald, deceased, was formerly the owner of the farm demanded in this action. And that it contained about thirty acres of land situated in the town of Gorham, and about fifteen acres adjoining thereto, situated in the town of Standish. The latter was called the wood lot and "used for pasturing." The demandant claims title under a sale made in October, 1841, by the administrator of the deceased. The tenants are a son of the deceased and his wife. They claim title to the thirty acres situated in the town of Gorham by a conveyance from the deceased to the wife of his son, bearing date on January 10, 1833. They also claim title to the whole by a conveyance from the deceased to the wife of his son, bearing date on April 12, 1836. And they claim title to the lot in Standish under a sale made on June 11, 1838, by a collector of taxes to Phineas Ingalls, and by a conveyance from him to the wife of the son, bearing date on July 5, 1841.

The presiding Judge instructed the jury, "that if they were satisfied, that the land sold for taxes was connected with the homestead for purposes of fuel and pasturing, it should be considered as improved land, and not liable to be taxed and sold as non-resident land, unless the owners lived out of the State." The act concerning the assessment and collection of taxes, St. 1821, c. 116, § 30, provided that "the unimproved lands of non-resident proprietors, or improved lands of proprietors living out of the limits of this State," might be advertised and sold in the manner therein prescribed to obtain payment of the taxes assessed upon them. By an additional act, St. 1823, c. 229, the assessors were authorized to assess improved lands to the tenants in possession or to the owner

resident within the State or elsewhere. This provision follows. " And the collectors of taxes for the several towns and plantations within this State are hereby authorized to collect such taxes in the manner pointed out in the thirtieth section of the act to which this is in addition." This provision, authorizing the sale of improved land taxed to persons residing within the State, appears to have been overlooked ; and the jury were not therefore instructed as to the effect of the proceedings in making the assessment and sale of the lot of land in the town of Standish. The tenant will be entitled to have these matters considered and decided.

It is also insisted, that the return of the collector on the warrant, stating his proceedings in advertising and selling the estate, should have been received as evidence, that he had complied with the requisitions of the statute. By another additional act, c. 337, § 8, it was provided, that the notice of sale required by the thirtieth section of the first act should be published three months prior to the time of sale. Then follows the provision, that the collector shall record and return his particular doings in the sale of improved lands of non-resident proprietors, or improved lands of proprietors living out of the State within thirty days after the sale. But this record and return are not required on the sale of improved lands of proprietors residing within the State. It would seem, that this distinction must have been designedly made ; for it would have been more easy to have provided for such a return of all sales made under the thirtieth section, than to have specially limited it in the manner before stated. Whatever may be the law, considered independently of the provision of the statute, that would seem to create a distinction, which would by implication exclude such a record and return in those cases not provided for in the statute.

It is contended also in defence, that the administrator of the father was not authorized to sell the estate under a license for the payment of his debts ; because he neither died siezed of it nor had he fraudulently conveyed it, nor been colorably or fraudulently disseized of it. This argument assumes, that the

Wescott *v.* McDonald.

language of the statute, c. 52, authorizing an administrator to convey all such estate, as the deceased "had fraudulently conveyed," must be limited to cases of premeditated fraud. The object of the statute was to enable creditors, through the action of the administrator, to obtain their debts out of the estate in all cases, when they were by law entitled to consider the conveyances fraudulent as against them. And conveyances may be fraudulent as against them without proof of actual fraud, when made without any valuable consideration received therefor. And there is no reason to believe, that those terms were used by the legislature with the intention to include actual only, and not constructive fraudulent conveyances. And how is it to be decided before the license is granted, and the sale is made, that the conveyance was or was not fraudulent? There is no mode provided by law; and the statute must of necessity be so construed, as to permit a license and sale, when the conveyances are alleged to be fraudulent, for the very purpose of having that matter legally decided. If the conveyance prove to be fraudulent as against creditors, the sale was authorized, and may be valid; and if not fraudulent, it was not authorized, and no title can be acquired under it. The other points may not arise again on a new trial, and it is not necessary to decide them.

*Exceptions sustained,*
*and a new trial granted.*